Marcus Aurelius BURNS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–94–00053–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 23, 1996.

Rehearing Overruled June 27, 1996.

Sherrie Haussner Travers, Katy, for appellant.

Lester Blizzard, Houston, for appellee.

Before YATES, FOWLER and O'NEILL, JJ.

**OPINION**

O'NEILL, Justice.

Appellant, Marcus Aurelius Burns, was charged by felony indictment with aggravated assault and attempted murder. Appellant was found guilty of attempted murder at a trial before the court. The case was recessed pending a pre-sentence investigation. Following a sentencing hearing, the trial court assessed punishment at confinement for forty years in the Texas Department of Criminal Justice, Institutional Division. In three points of error and three supplemental points of error, appellant alleges: (1) the evidence was insufficient to support a finding of attempted murder; (2) the trial court erred in denying appellant's motion for a continuance; (3) he has been denied a complete record because an exhibit relating to identity is missing; and (4) the trial court erred in admitting the pre-trial identifications of two witnesses. We affirm.

1. Dixson testified at trial that "get you some business" meant "if you don't want to play ball,

**Background**

A little after 5:30 p.m. on October 22, 1992, Leroy Dixson ("Dixson") arrived at Ruth Connor Sneed Middle School to play basketball. Dixson and his friends, Ron Williams ("Williams"), Carlos Webster ("Webster"), and "Bee," challenged a team on which appellant was playing. Dixson's team was winning when appellant drove to the basket. Appellant was fouled by Williams and Webster. Appellant fell to the ground and was sandwiched by Williams and Webster.

Appellant stood up, looked at Dixson and said, "I'm not going to be fouled like this." Dixson replied, "Everybody out here gets fouled. You know, play ball and keep the game going." Appellant then threatened Dixson saying, "Especially you, black b___. I'm not going to be fouled like this and I'll slap the s___ out of you." Dixson responded, "Well, I'm not going to be slapped by you. Just get you some business."[1] As he walked off the court, appellant said to Dixson, "I'll get me some business. I'll get me some business."

Appellant then walked over to a grassy area where his son, a toddler, was sitting. Appellant reached into a book bag and pulled out a .380 Berretta. Appellant took a bullet from the book bag and loaded the gun. Appellant cocked the gun and walked back over to Dixson. Appellant put the gun to Dixson's head and said, "You think you're bad. You ain't so bad now, are you, black b___." Dixson then said, "You gonna shoot me over a basketball game?" Dixson tried to move appellant's hand away from his head. Appellant stepped back and fired at Dixson, striking Dixson in the shoulder. The bullet lodged in Dixson's chest.

Dixson looked at where he was shot and then heard someone yell, "Leroy run, he's trying to shoot you again." Dixson looked up, saw appellant pulling the trigger on the gun and ran. Dixson looked back and saw appellant chasing him with the gun pointed his way. Appellant tried to shoot the gun again, but it jammed. Dixson ran toward a pedestrian and asked for help. When the

don't play ball. Play ball if you want to play basketball."

pedestrian saw that appellant was still chasing Dixson, he went inside a building. One of Dixson's friends then drove up and took him to the hospital.

Appellant returned to the playground and calmly told Williams, "New York, see, I don't be bulls_____." Appellant put the gun back into his book bag, picked up his son, got on his bicycle and rode away.

### Sufficiency of the Evidence

■ In his first point of error, appellant argues that the evidence was insufficient to prove attempted murder, as opposed to attempted voluntary manslaughter, because the State failed to prove beyond a reasonable doubt the absence of sudden passion arising from an adequate cause.

■ When reviewing a case for sufficiency of the evidence, the reviewing court views all of the evidence in the light most favorable to the verdict and then determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App. 1991). As a reviewing court, we may not weigh the evidence. *See Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). Our duty is to determine whether the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence in a light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 421–22 (Tex.Crim. App.1992). In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

■ Attempted voluntary manslaughter is a lesser included offense of attempted murder. *Scott v. State,* 867 S.W.2d 148, 154 (Tex.App.—Austin 1993, no pet.) (citing *Ex Parte Buggs,* 644 S.W.2d 748, 749 (Tex.Crim. App.1983)). Voluntary manslaughter occurs when a person causes the death of another while he is "under the immediate influence of sudden passion arising from adequate cause." TEX.PENAL CODE ANN. § 19.04(a) (1994). "Sudden passion" is passion "directly caused

by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX.PENAL CODE ANN. § 19.04(b) (1994). "Adequate cause" is "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX.PENAL CODE ANN. § 19.04(c) (1994).

■ In deciding whether sudden passion is raised, the question is whether there is any evidence, however weak, that could support a rational jury finding that the accused acted under the immediate influence of sudden passion arising from an adequate cause. *Merchant v. State,* 810 S.W.2d 305, 309 (Tex. App.—Dallas 1991, pet. ref'd). When raised, the State must disprove the issue of sudden passion beyond a reasonable doubt. *Scott v. State,* 814 S.W.2d 517, 518 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). For a claim of fear or anger to rise to the level of sudden passion, the defendant's mind must be rendered incapable of cool reflection. *Gonzales v. State,* 717 S.W.2d 355, 357 (Tex.Crim.App. 1986); *Welch v. State,* 908 S.W.2d 258, 262 (Tex.App.—El Paso 1995, no pet.).

Appellant has presented no evidence of "sudden passion." At trial appellant denied that he was at the basketball game on October 22, 1992, and denied that he shot Dixson. As a result, there is no factual basis for the court to have found sudden passion. *Francis v. State,* 801 S.W.2d 548, 550 (Tex.App.— Houston [14th Dist.] 1990), *pet. ref'd,* 805 S.W.2d 474 (Tex.Crim.App.1991) (appellant not entitled to jury instruction on voluntary manslaughter where appellant denied killing the decedent); *see also Keech v. State,* 707 S.W.2d 178, 185 (Tex.App.—Corpus Christi 1986, pet. ref'd). Moreover, appellant presented no evidence of adequate cause. The evidence showed that appellant was fouled at a basketball game. We would be loathe to say that every time a person is pushed, jostled, or offended while engaging in a contact sport, the offender evokes a degree of "anger, rage, resentment, or terror" that would cause a person of "ordinary temper" to be rendered "incapable of cool reflection." *See*

TEX.PENAL CODE ANN. § 19.04(c). A common foul in the course of a basketball game does not rise to the level of "sudden passion."

Point of error number one is overruled.

### Motion for Continuance

■ In his second point of error, appellant argues that the trial court erred in denying his motion for continuance, which was based upon the absence of witnesses he expected to appear and his inability to locate another witness. Appellant has failed to preserve this point of error for appeal. The proper method for preserving error in the denial of a motion for continuance based on the absence of a material witness is to raise the issue in a motion for new trial. *Baker v. State,* 467 S.W.2d 428, 429 (Tex.Crim.App. 1971); *Patterson v. State,* 869 S.W.2d 429, 431 (Tex.App.—Houston [1st Dist.] 1993, no pet.); *Martinez v. State,* 802 S.W.2d 334, 337 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd); *Howard v. State,* 625 S.W.2d 440, 441 (Tex.App.—Houston [14th Dist] 1981, no pet.). In failing to submit the issue in a motion for new trial, appellant preserves nothing for review. *Howard,* 625 S.W.2d at 441.

Point of error number two is overruled.

### Missing Exhibits

■ In his third point of error, and his second and third supplemental points of error, appellant argues that, through no fault of the court reporter, exhibit number five, a videotape of the lineup, is missing from the record. Therefore, appellant argues, this court cannot unequivocally rule that the pre-trial line-up was not impermissibly suggestive and the case should be reversed for a new trial.[2] The State responds that it is appellant's duty to bring forward a proper record on appeal and the absence of the exhibit does not merit reversal.

■ Appellant has failed to articulate why the tape might have been impermissibly suggestive. Moreover, appellant cites no specific relevant authority to support his claim. A

point of error that is conclusory and cites no authority presents nothing for review. *Pierce v. State,* 777 S.W.2d 399, 418 (Tex. Crim.App.), *cert. denied,* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990); *MacDonald v. State,* 761 S.W.2d 56, 60 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). We find this point of error to be inadequately briefed and decline to address it. *See Vuong v. State,* 830 S.W.2d 929, 940 (Tex.Crim. App.), *cert. denied,* 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992); TEX.R.APP.P. 74(f).

Appellant's third point of error is overruled.

### Pre–Trial Identifications

■ In his first supplemental point of error, appellant argues the trial court erred by failing to exclude testimony from an unnecessarily suggestive pre-trial line-up. The two witnesses who identified appellant, Kevin Bassett and Carlos Webster, were permitted to view the video line-up together. Appellant argues that "allowing witnesses to view the lineup in the same room is a suggestive procedure requiring reversal."

■ A pre-trial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused a fair trial. *Barley v. State,* 906 S.W.2d 27, 33 (Tex.Crim.App.1995) (citing *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)). To analyze appellant's claim, we must examine the "totality of the circumstances" surrounding the case and determine the reliability of the identification. *Id.*

■ Appellant argues that the pre-trial identification was impermissibly suggestive because Bassett and Webster were allowed to view the video line-up in the same room. However, appellant never articulates why such an occurrence would be, in and of itself, impermissibly suggestive. Suggestiveness may be created by the manner in which the pre-trial identification procedure is conduct-

---

**2.** Although appellant argues that three other exhibits are missing from the record, appellant presents no argument as to those exhibits or why

their exclusion constitutes error. Therefore, we decline to address the other missing exhibits.

ed, for example by police pointing out the suspect or suggesting that a suspect is included in the line-up. *Barley,* 906 S.W.2d at 33 (citations omitted). Suggestiveness may also be created by the content of the line-up itself if the suspect is the only individual closely resembling the pre-procedure description. *Id.* (citing *Williams v. State,* 675 S.W.2d 754 (Tex.Crim.App.1984). None of these suggestive events occurred in the present case. The officers did not point out the suspect, nor does it appear that the suspect was the only individual closely resembling the pre-procedure description. The officers took each witness aside and asked them individually if they recognized the appellant in the line-up. We see no reason, and appellant has offered none, why allowing the two witnesses to view the line-up at the same time would be impermissibly suggestive.

Nevertheless, even if we were to presume that the identification procedure was impermissibly suggestive, appellant has failed to make the required showing that there was a "very substantial likelihood of misidentification." *Id.* at 33. In fact, appellant has not even argued this issue. Reliability is the "linchpin" in determining the admissibility of an identification. *Id.* at 34 (citing *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and *Cantu v. State,* 738 S.W.2d 249 (Tex.Crim.App.), *cert. denied,* 484 U.S. 872, 108 S.Ct. 203, 98 L.Ed.2d 154 (1987)). If indicia of reliability outweigh suggestiveness then the identification is admissible. *Id.* (citing *Harris v. State,* 827 S.W.2d 949 (Tex.Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992)). "Appellant must show by clear and convincing evidence that the identification has been irreparably tainted before this Court will reverse his conviction." *Id.*

In determining whether a very substantial likelihood of misidentification has been created, we consider the following non-exclusive factors: (1) the witness' opportunity to view the criminal act; (2) the witness' degree of attention; (3) the accuracy of the suspect's description; (4) the level of certainty at the time of confrontation; and (5) the time between the crime and the confronta-

tion. *Id.* at 35 (citing *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). These factors are weighed against the corrupting effect of any suggestive identification procedures. *Id.*

In the instant case, both witnesses had been playing basketball with appellant prior to the incident. Appellant had been fouled by Webster and the complainant. Both witnesses watched appellant chase the complainant after the first shot was fired. Thus, the witnesses' degree of attention was high and they had ample opportunity to view the criminal act. In addition, both witnesses recognized appellant from previous games. Webster testified that he had played basketball with appellant twenty to twenty-five times. Bassett also testified that he had played basketball with appellant approximately twenty times prior to the shooting. Moreover, the witnesses never wavered in their identification of appellant. We find that the pre-trial identifications were reliable, and appellant has presented us with no evidence or arguments to the contrary.

Supplemental point of error number one is overruled.

The judgment of the trial court is affirmed.