NO. 07-01-0156-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 16, 2001

______________________________

MICHAEL SEAN HOBBS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 337
TH
 DISTRICT COURT OF HARRIS COUNTY;

NO. 853446; HONORABLE DON STRICKLIN, JUDGE

_______________________________

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

In three issues, appellant Michael Sean Hobbs challenges his conviction of burglary of a habitation and the enhanced punishment of ten years confinement in the Institutional Division of the Department of Criminal Justice and a fine of $2,500.  In his first two issues, he argues the trial court abused its discretion in ruling that the in-court identification of two witnesses was not tainted by an impermissibly suggestive pretrial identification procedure.  In his third issue, he challenges the sufficiency of the evidence to support his conviction.  Finding no reversible error, we affirm the judgment of the trial court.

Because the primary evidence against appellant relates to the identification of him by two witnesses, Cecil Gilbert and Harrison Gill, we will relate the evidence as it pertains to their testimony.  On August 11, 2000, Gilbert looked out his window and noticed a strange car in the driveway of his neighbor, Richard Fronatt.   He then saw a man exit the house with a white bag and throw it in the car.  Gilbert went outside to get a closer look when he saw the man come out of the house carrying a television set.  Gilbert yelled at the man, who turned and dropped the set.  The man jumped in his car and attempted to hit Gilbert to keep him from seeing the license plate and then hit a gas meter.  Gilbert hurried to put out a cigarette because of the broken gas meter.  He was unable to get the license number as a result of the car throwing dirt in his eyes.  He later identified appellant as the man he saw in both a pretrial photographic lineup and at trial.

Harrison Gill lived across the street from Fronatt.  On the same day, he observed a car in Fronatt’s driveway that he had not seen before.  He saw a man come out of the house carrying a television.  The man dropped it when Gilbert started yelling at him.  Gill watched as the man tried to drive away, hitting a gas meter in the process.  Gill wrote down the license number, which he gave to police.  He also identified appellant as the man he had seen in both a pretrial photo array and at trial.  

The license tag number was traced to appellant’s girlfriend, although she testified the car was in her name only because appellant had credit problems and the car really belonged to him. The apartment manager where they lived also testified that appellant was the one who drove that car.   

In his first two issues, appellant argues the trial court erred in failing to suppress the in-court identifications of Gilbert and Gill because they were tainted by an impermissibly suggestive pretrial photo lineup.  He contends that appellant’s picture was prominently placed in the first position and disproportionately larger than the other pictures.  He also argues there were other inconsistencies between the pictures, including the fact that only one other participant had any facial hair, only one had an earring, one was light-skinned,  one had an eye injury, and all but appellant had small, close-set ears.  Since the witnesses were only able to provide a general description to the police, that fact reflects unfavorably on the identification of appellant from the photo spreads.   

An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification.  The test is whether, considering the totality of the circumstances, the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.  
Simmons v. United States
, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); 
Loserth v. State
, 963 S.W.2d 770, 771 (Tex.Crim.App. 1998).  The factors to be weighed against the corrupting effect of a suggestive identification in determining the reliability of the identification are:  (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness’s degree of attention, (3) the accuracy of the witness’s prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.  
Neil v. Biggers
, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); 
Loserth
, 963 S.W.2d at 772.  In our review, we must consider these factors, which are issues of historical fact, deferentially in a light favorable to the trial court’s ruling and then weigh them de novo against the effect of the suggestive pretrial identification.  
Loserth
, 963 S.W.2d at 773-74.

Suggestiveness may be created by the manner in which the procedure is conducted or by the content of the lineup where the suspect is the only individual closely resembling the pretrial description or where the lineup consists of persons with distinctly different appearances from the suspect.  
Burns v. State
, 923 S.W.2d 233,237-38 (Tex.App.-- Houston [14
th
 Dist.] 1996, pet. ref’d); 
Withers v. State
, 902 S.W.2d 122, 125 (Tex.App.-- Houston [1
st
 Dist.] 1995, pet. ref’d).  However, minor discrepancies between the participants does not render the lineup suggestive.  
Withers
, 902 S.W.2d at 125.   

Gilbert described the man he saw to police as a black male, about six feet tall with a thin build wearing a white tee shirt and dark-colored pants.  The photo array he was shown consisted of pictures showing the neck and head of six individuals.  Gilbert testified that all of the pictures were of males of the same race with basically the same build or size and same hair styles.  He admitted that some of the men had darker skin than others.  Upon questioning by defense counsel, he also stated that the first photo “looked, maybe bigger.”  Gilbert was not told that one of the pictures might have been the person who burglarized the house.  He also stated that he positively knew the photo he selected was the man he saw.
(footnote: 1) 

The original exhibit containing the color photo array is in the record before us.  All the photos are of black males who appear to be approximately the same age with similar hair styles.  Only two of the participants appear to be wearing earrings and not all of them have facial hair.  Additionally, several of the men have lighter skin than others, and one man appears to have an injury to his eye.  However, those differences are not substantial.  
See Tell v. State
, 908 S.W.2d 535, 539 (Tex.App.--Fort Worth 1995, no pet.) (none of the men differed unreasonably from the description of the suspect and the defendant did not stand out distinctly from the other men, even though there were some differences in weight, height and complexion); 
Withers
, 902 S.W.2d at 125 (differences in height, weight, age, and facial hair did not make the identification unduly suggestive).  In light of the fact that Gilbert did not seem to notice that the picture of appellant may have been slightly larger until specifically questioned about it by defense counsel, the photo lineup was not impermissibly suggestive.

However, even assuming arguendo that it was impermissibly suggestive, we do not believe there was a substantial likelihood of misidentification.  Appellant turned and looked Gilbert in the face when he was about 30 feet away.  Gilbert testified he looked “straight in his eyes.”  The fact that Gilbert may have been distracted later by appellant’s attempt to leave the scene does not mean that Gilbert was not paying close attention at the time he actually had the opportunity to observe appellant’s face.  Gilbert was also very positive about his identification and was shown the photo array only a week after the incident.  The description provided by Gilbert also matched appellant, although the description was given only in general terms.

Gill said at trial that he had an opportunity to get a good look at appellant as he was leaving the house.  The distance from Gill’s house to Fronatt’s house is approximately 75 to 80 feet. The day was bright and sunny, and he was wearing his glasses.   He also saw appellant in the car.  He described the suspect as a black man, about six feet tall, weighing 160-170 pounds with a dark complexion and wearing a light colored shirt and dark pants.  There is no indication he was distracted at the time he observed the suspect.  Gill was shown the photo lineup several days after the incident.  He thought he might have known one of the men in the lineup from his work as a corrections officer, but not from the crime scene, and he was positive in his identification of appellant.

Both witnesses testified that they believed the suspect had ears that stuck out, although the investigating officer did not remember that fact or make note of it in his report.  Both men also averred they made their identification from their observations at the crime scene and not from the photo array.  The investigating officer testified at trial that appellant’s photograph appeared in the first position because the computer randomly placed it there.  He found a previous picture of appellant and it was larger because that is “just the way the photograph was taken.”  Both witnesses were given instructions prior to viewing the photographs which included, among others, that they should not conclude that the photographs contained the picture of the person who committed the crime, they were not obligated to identify anyone, and that it was just as important to clear innocent persons as to identify guilty ones.   In giving deference to these historical facts and weighing them against any suggestiveness, we do not believe that there was a substantial likelihood of misidentification.  Although appellant argues that we should focus our attention on the fact that the description given by the witnesses was very general, to do so would be to give weight to only one of the five 
Biggers
 factors to the exclusion of the other four, which weigh favorably in terms of the reliability of the identification.    

Appellant claims he was harmed by the admission of the in-court identification because of the lack of any other evidence to support his conviction except the license tag obtained by Gill.  Because both Gilbert and Gill described the car they saw as small and burgundy or maroon, when the car registered under that tag number was a mid-size dark brown or gray car, that evidence should not carry much, if any, weight.  Gilbert described the car as a Honda or Acura, and the car was actually a 1987 Acura.  We also have two color photographs of the car which were offered by appellant at trial.  The car is dark colored and, from a distance, could have appeared to be maroon.  Thus, there was other evidence to connect appellant to the crime.

Appellant further claims the harm was exacerbated by the trial judge’s limitation of his cross-examination of Gilbert during the suppression hearing, in which he attempted to question Gilbert relative to where he saw the burglar, the quality of his eyesight, how much alcohol he had consumed prior to being shown the photospread, and how long he had viewed the array before choosing a picture.  The judge found these matters irrelevant to a determination of whether there had been any improper influence or procedure and informed counsel he could go into those other matters on cross-examination before the jury.  The trial court later determined it had not heard anything that suggested there was improper influence.  We note that the trial court was not required to consider the 
Biggers 
factors, on which appellant contends he was trying to present evidence, since the court did not find the photo spread to be impermissibly suggestive.  Even so, appellant concedes that he has failed to preserve error with respect to his complaint, and therefore there is nothing for us to review.  

He further complains of the demeanor of the trial judge before the jury.  Several times when appellant attempted to nail down the testimony of Gilbert, the court interjected that the question had already been answered.  Additionally, without a prior objection from the State, the court also admonished defense counsel several times that he was arguing with the witness.  Appellant claims that the effect of these actions was to signal to the jury that his questions were without merit.  As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion.  Tex. R. App. P. 33.1(a).  Once again, no error was preserved.  Therefore, finding no reversible error, appellant’s first two issues are overruled.

In his third issue, appellant challenges the factual sufficiency of the evidence to support the guilty verdict.  In reviewing a factual sufficiency challenge, we view the evidence without the prism of “in the light most favorable to the prosecution” and set it aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  
Clewis v. State
, 922 S.W.2d 126, 149 (Tex.Crim.App. 1996).  In performing our review, we must remember that the trier of fact is the sole judge of the weight and credibility of the evidence, and we may not substitute our judgment for that of the jury.  
Santellan v. State
, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997).  A decision is not manifestly unjust because a factfinder has resolved conflicting views of the evidence in favor of the State.  
Cain v. State
, 958 S.W.2d 404, 410 (Tex.Crim.App. 1997).  

Appellant asserts that we should set aside the verdict for the following reasons:  (1) both witnesses were only able to provide a vague, generic description of the man they saw, (2) both witnesses were shown an impermissibly suggestive photospread and they tailored their recall to include prominent ears as depicted in the spread, (3) the car registered to the license number does not match the description observed by the witnesses, (4) law enforcement personnel did not establish the whereabouts of appellant’s car at the time of the offense or verify that the description matched the car registered to the license plate, (5) no fingerprints or other forensic evidence connected appellant to the crime, and (6) appellant’s alibi witness was unimpeached.  

We have already determined that the in-court identifications were proper and discussed the description of the car at the crime scene.  While it is true that there was no forensic evidence connecting appellant to the crime scene, there was testimony that fingerprints were taken, but were not of a sufficient quality to be able to make an identification.  Appellant’s former girlfriend also testified without contradiction that appellant loaned his car to a friend named “Eddie” that day and she spent the entire day with appellant.  She also testified that appellant was wearing a beard and mustache on the day in question.  However, the jury was free to accept or reject that testimony.  It was also up to the jury to weigh the credibility of the evidence regarding the description of the car and the alleged failure of law enforcement personnel to establish its whereabouts and the credibility of the in-court identifications.  The verdict, in light of the evidence, is not clearly unjust, and we therefore overrule appellant’s third issue.

Having overruled appellant’s issues, we affirm the judgment of the trial court.  

John T. Boyd

 Chief Justice

Do not publish.

FOOTNOTES
1:
After ruling that it had heard no evidence that improper influence had caused a false identification, the trial court did not permit Gill to testify at the suppression hearing.  At trial, he testified he was not told the suspect was in the photo array.  The pictures were of six black males with the same hair color and short haircuts.  He thought some of the participants were a little heavier than others and that attention could be drawn to the first photograph.  He had no doubt that the person he identified was the one he saw coming from his neighbor’s house.