Affirmed and Memorandum Opinion filed March 10, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00610-CR

___________________

 

Michael Jackson, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 268th District Court

Fort Bend County,
Texas



Trial Court Cause No. 49345

 



 

 

MEMORANDUM OPINION

            Appellant Michael Jackson was convicted of murder.
Punishment was assessed at life imprisonment. On appeal, he challenges the trial
court’s failure to suppress a suggestive out-of-court identification. He also
contends the evidence was legally and factually insufficient to support his
conviction. We affirm.

FACTS

            The
complainant, Frederick Robinson, died after being shot twice in the head at
close range. The shooting occurred at approximately 7:30 p.m. on April 2, 2008,
as Robinson was walking toward the intersection of West Fuqua and West
Ridgecreek in Fort Bend County.

            A
number of witnesses identified appellant as the shooter at trial. Daishawn
Gillespie and her boyfriend, Corey White, were walking in the area at the time
of the shooting. Gillespie testified that when she heard the first gunshot, she
looked down the street and saw Robinson lying on the ground. The only person
near him was appellant, whom she observed holding a gun. Gillespie recognized
appellant as the boyfriend of White’s sister. She also described appellant as
having dreadlocks at the time.

Gillespie testified that
she heard the second shot without seeing the shooter. She later admitted to giving
police detectives four or five different versions of the incident. In one of
these accounts, she stated that appellant was the person who killed Robinson.

            White
testified that just before the shooting, he observed Robinson walking towards
him and Gillespie on West Ridgecreek. He further claimed that appellant was
some distance in the background. White denied seeing the shooter when he heard
the first gunshot. After Robinson fell to the ground, however, White witnessed
appellant shoot Robinson at point blank range. White testified that it was
still daylight outside and there was no one else in the vicinity.

            Shauna
Gatewood was driving down West Ridgecreek when she witnessed the shooting. The
street lamps were still turned off and she testified that the sun had not
completely set. In the available light, she was able to observe three people walking
as a group behind another individual. Gatewood believed that all four were
males. According to Gatewood, the leader snuck up behind the lone individual
and shot him with a pistol.

            Gatewood
made a u-turn on West Ridgecreek after witnessing the first shot. The shooting
occurred in the driveway of one of her friends, and Gatewood said she felt an
obligation to reexamine the shooter for identification purposes. When she
turned around, she witnessed the group of three standing over the complainant
and talking to each other before the shooter fired again. She said she looked
at the shooter “long enough to tell you the structure of his face.”

Later that evening,
Gatewood offered police detectives a description of the shooter. She testified
that the leader of the group was “way taller” than the other three, describing
him further as an African American with a dark complexion, slender build, and medium-length
dreadlocks that were below his ears but above his shoulders. Although
she testified that she was “not good in inches,” she estimated his height to be
somewhere between six feet and six-foot-one. Appellant’s offense report
indicated that he was six-foot-seven.

A few days after the
shooting, Gatewood identified appellant as the shooter in a six-person photo
spread. Three of the men in the photo spread had dreadlocks, and the rest wore
their hair in braids. All six had hair at least as long as their ears, and none
had hair that extended past their shoulders.

Appellant moved to
suppress the identification as being impermissibly suggestive. In a hearing on
the motion, Gatewood testified that the identification took place in a police
patrol car outside her local nail salon. The officers presented her with the
photo spread facedown and asked her to examine the photos. Because her nails
were wet, she asked the officers to turn the photo spread over for her.
Gatewood testified that the officers did not suggest her selection or point to
appellant’s picture when they revealed the photo spread. According to Gatewood,
the officers merely told her, “[I]f you have any doubts about it, don’t worry
about it, we ain’t going to pressure you.”

The trial court denied
the motion to suppress, and Gatewood later identified appellant as the shooter
in open court. She conceded that appellant was much taller than six feet, but
she added, “Well, when you’re driving, I really can’t see it.”

The State also produced
testimony from Ronnie Ray, a youth minister who had become somewhat acquainted
with appellant through his close friendship with the White family. Ray
testified that he learned of the shooting shortly after its occurrence. Later
that evening, he received a phone call from appellant requesting help from a
nearby motel. When Ray picked him up, appellant entered his truck and twice
told him, “I killed that [expletive].” Ray took appellant to a friend’s apartment,
where he later contacted the police.

In the short time
preceding his arrest, Ray said that appellant decided to cut off his dreadlocks.
The State offered additional evidence that appellant attempted to conceal his
identity. Roger Chappell, one of the arresting officers, testified that once appellant
was in custody, he gave two false identities before finally revealing his real name.

ISSUES PRESENTED

            In
his first issue, appellant contends the trial court erred in allowing
Gatewood’s in-court identification, positing that her out-of-court
identification was impermissibly suggestive. In his second issue, he contends
the evidence was legally and factually insufficient to support his conviction.
Because a finding of legally insufficient evidence would require us to reverse
and render judgment of acquittal, we examine that issue first.

SUFFICIENCY OF THE EVIDENCE

            Appellant
asserts, without analysis, that the evidence is legally insufficient to support
a conviction for murder. He also argues in detail that the evidence is
factually insufficient, questioning certain inconsistencies in the testimony as
well as the credibility of the witnesses.

            During
the pendency of this appeal, the Texas Court of Criminal Appeals decided that
only one standard should be used to evaluate the sufficiency of the evidence in
a criminal case: legal sufficiency. Brooks v. State, 323 S.W.3d 893, 895
(Tex. Crim. App. 2010) (plurality opinion). Accordingly, we review appellant’s second
issue under the standard announced in Jackson v. Virginia, 433 U.S. 307
(1979), asking only whether the evidence against him was legally sufficient to
sustain a verdict beyond a reasonable doubt. See Pomier v. State, 326
S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

            When
reviewing the sufficiency of the evidence, we examine all of the evidence in
the light most favorable to the verdict and determine whether a rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson, 433 U.S. at 319. Although we consider
everything presented at trial, we do not reevaluate the weight and credibility
of the evidence and substitute our judgment for that of the fact finder. Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is
the sole judge of the credibility of witnesses and of the weight given to their
testimony, any conflicts or inconsistencies in the evidence are resolved in
favor of the verdict. Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim.
App. 2000). Our review includes both properly and improperly admitted evidence.
Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider
both direct and circumstantial evidence, as well as any reasonable inferences
that may be drawn from the evidence. Id.

            To
obtain a conviction for murder, the State was required to prove that appellant
(1) intentionally or knowingly caused the death of an individual; or
(2) intended to cause serious bodily injury and committed an act clearly
dangerous to human life that resulted in the death of an individual. Tex. Penal
Code Ann. § 19.02(b)(1)­–(2) (West 2010).

            We
conclude that the record contains ample evidentiary support to sustain
appellant’s conviction. Three witnesses identified appellant as the shooter.
Ray testified that appellant admitted to killing a person on the night of the
offense. Appellant also cut off his dreadlocks and supplied two false names to
officers following his arrest. Cf. Yost v. State, 222 S.W.3d 865, 875
(Tex. App.—Houston [14th Dist.] 2007, pet. ref’d) (holding that evidence of
concealment may reflect a defendant’s consciousness of guilt for the charged
offense). Viewing the evidence in the light most favorable to the verdict, a
rational juror could have found every element of murder beyond a reasonable
doubt. Appellant’s second issue is overruled.

OUT-OF-COURT IDENTIFICATION

            In
his remaining issue, appellant contends the trial court erred in denying his
motion to suppress Gatewood’s out-of-court identification.

            A
two-step analysis is used to determine whether the trial court should have
suppressed a pre-trial identification. Barley v. State, 906 S.W.2d 27,
33 (Tex. Crim. App. 1995) (citing Simmons v. United States, 390 U.S. 377
(1968)). We first consider whether the out-of-court identification was
impermissibly suggestive. Id. If so, we then consider whether the
suggestive procedure gave rise to a substantial likelihood of irreparable
misidentification. Id. This analysis requires an examination of the
totality of the circumstances surrounding the particular case and a
determination of the reliability of the identification. Id.

            Appellant
attacks the reliability of the pre-trial identification on a number of grounds.
He criticizes the “non-professional” setting in which Gatewood examined the
photo spread. He also criticizes the photos themselves, contending only half of
the featured males had dreadlocks. Of the three with dreadlocks, appellant
further asserts that one of the men appeared significantly younger than the
others.

            When
we determine the suggestiveness of an out-of-court identification, we examine
primarily the manner in which the pre-trial procedure was conducted, as well as
the content of the line-up or photo spread. Burns v. State, 923 S.W.2d
233, 237–38 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d). The procedure is
suggestive, for instance, when the police point to the suspect or suggest that
a suspect is included in the line-up or photo spread. Ibarra v. State,
11 S.W.3d 189, 196 (Tex. Crim. App. 1999). The content may also be suggestive
when the suspect is the only person in the line-up or photo spread who closely
resembles the description given by the witness. Brown v. State, 29
S.W.3d 251, 254 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Even if the
identification was suggestive, appellant has the burden of showing by clear and
convincing evidence that the identification was impermissibly so. Barley,
906 S.W.2d at 33–34.

            Appellant
does not explain how an identification procedure is suggestive simply because
it is conducted in the backseat of a patrol car. The officers specifically
advised Gatewood that she was under no pressure to make a selection. Appellant
has failed to show how the pre-trial identification was tainted by any action
on the part of the officers. 

            Similarly,
appellant has not shown that the content of the photo spread was impermissibly
suggestive. All six photographs depict African-American men with dark
complexions and hair that extends at least as long as their ears. Although only
three of them wore their hair in dreadlocks, due process does not require that
the individuals exhibit features exactly matching those of the accused. See Colgin
v. State, 132 S.W.3d 526, 532 (Tex. App.—Houston [1st Dist.] 2004, pet.
ref’d). Rather, a photo spread must simply depict individuals who fit a rough
description of the suspect. Wilson v. State, 15 S.W.3d 544, 553 (Tex.
App.—Dallas 1999, pet. ref’d). Appellant has not demonstrated by clear and
convincing evidence that the remaining individuals exhibited physical traits so
unlike his own as to render the photo spread impermissibly suggestive.

            Because
we conclude that the out-of-court identification was not impermissibly
suggestive, we do not address the merits of appellant’s argument that
Gatewood’s identification resulted in a substantial likelihood of irreparable
misidentification. Appellant’s first issue is overruled.

CONCLUSION

            The judgment of the trial court is affirmed.

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Chief Justice Hedges and Justices
Frost and Christopher.

Do Not Publish — Tex. R. App. P. 47.2(b).