In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-12-00058-CR

**JERRY GLENN JOHNSON A/K/A JERRY GLEN JOHNSON A/K/A JERRIDY JOHNSON A/K/A JERRY JOHNSON A/KA DONOVAN JEFFERSON A/K/A/ BABY J, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court
Jefferson County, Texas
Trial Cause No. 11-12248**

**MEMORANDUM OPINION**

Jerry Glenn Johnson[1] appeals his aggravated robbery conviction, complaining the trial court should have disallowed the testimony of witnesses who he asserts erroneously identified him as the person who committed the robbery. In his motion to suppress, Johnson asked the trial court to suppress testimony from witnesses who identified him as the person who committed the robbery. With

_____

[1]Jerry Glenn Johnson is also known as Jerry Glen Johnson, Jerridy Johnson, Jerry Johnson, Donovan Jefferson, and Baby J.

1

respect to the witnesses who identified Johnson, we conclude the testimony was admissible because the pre-trial photographic identification procedure resulting in his identification as the robber was not impermissibly suggestive. In another issue, Johnson complains the trial court should have granted his request for a mistrial because the State elicited testimony from a defense witness who testified that he had visited Johnson while Johnson was in jail. With respect to Johnson's request for a mistrial, the record shows that Johnson failed to request a mistrial when the grounds on which his request was based became apparent; therefore, his request was untimely. Consequently, we hold the trial court did not abuse its discretion by denying his untimely request.

## Background

In July 2011, the complainant, J.N., was robbed while working at his store. According to J.N., on the day of the robbery, a man wearing an orange vest entered the store, walked around, and then left. Several hours later, the man returned, pulled out a gun, and demanded money. The man took J.N.'s money and wallet, hit J.N. in the head with the gun, and then fled. J.N. walked out of the store and yelled for help.

Officer Lam Nguyen, who was in the area when the robbery occurred, saw a man running towards him in the parking lot. Officer Nguyen testified that he was suspicious, so he stared at the man and looked to see where he was going.

2

According to Officer Nguyen, a "split second later[,]" J.N. came running out of his store yelling that he had been robbed. Although Officer Nguyen followed the suspect, he eventually lost sight of him.

Officer Jeremy Houston also testified during the trial. He explained that he became involved in the investigation of the robbery, and that he assisted another officer who had detained various men in the area where Officer Nguyen lost sight of the suspect. Officer Houston testified that after he arrived in the area where the men were being detained, he saw Johnson among the men and noticed that Johnson was "sweating profusely." However, Johnson left the area before J.N. arrived to identify the person who had robbed him.

According to Officer Houston, after bringing J.N. to the area where various men were being detained, he drove J.N. slowly by the line of men; J.N. indicated that one of the men lined up there was possibly the robber, but J.N. also indicated that he was not able to positively identify the person who had robbed him. Also, Officer Houston stated that the person J.N. identified in the line did not match Johnson's description.

Detective Herbert Otis, who also testified during Johnson's trial, explained how he had prepared a photo array that included Johnson's image. According to Detective Otis, he used a computer program to generate photographs of people who had characteristics similar to Johnson's. Detective Otis explained that after

3

showing J.N. and Officer Nguyen the same photo array, both J.N. and Officer Nguyen identified Johnson as the person who committed the robbery.

During the trial, J.N. identified Johnson, who was seated at counsel table, as the person who had committed the robbery. Officer Nguyen also identified Johnson in the courtroom as the person he saw running from J.N.'s store. At the conclusion of the trial, the jury found Johnson guilty of aggravated robbery. Following a punishment hearing, the jury assessed Johnson's punishment at thirty-one years in prison.

Analysis

In issues one through three, Johnson complains the trial court erred by admitting testimony of the two witnesses who identified him as the person who committed the robbery. Johnson's brief combines his argument regarding his first three issues, so we do so as well.

First, we address Johnson's argument concerning the admissibility of the photo array. According to Johnson, the array the police used to identify him excluded a possible suspect, a man who J.N. indicated was possibly the robber. Johnson argues that the absence of the possible robber in the array that was shown to J.N. and Officer Nguyen made the pretrial identification procedure impermissibly suggestive.

If too suggestive, the procedures followed by police to create a photographic array can be challenged at trial. *See Barley v. State*, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995) ("[A] pre-trial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law."). The Court of Criminal Appeals has stated: "An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification." *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008). "The test is whether, considering the totality of the circumstances, 'the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Id.* (quoting *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999)). However, "a finding that a challenged pretrial identification procedure was not in fact impermissibly suggestive will obviate the need to assay whether under the circumstances it created a substantial likelihood of misidentification." *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).

Courts analyze the suggestiveness of a pre-trial photographic identification by examining the manner that police conducted the procedure, as well as the content of the array. *See Burns v. State*, 923 S.W.2d 233, 237-38 (Tex. App.— Houston [14th Dist.] 1996, pet. ref'd). "Suggestiveness may be created by the manner in which the pre-trial identification procedure is conducted, for example by

police pointing out the suspect or suggesting that a suspect is included in the line-up or photo array." *Barley*, 906 S.W.2d at 33. Comments made by police during the presentation of the array to the witness are relevant in evaluating whether police signaled the identity of a particular image in the array. However, Johnson does not argue that police suggested to the witnesses that the suspect's image was in the photo array, nor does Johnson suggest that police pointed to his picture when the witnesses were shown the array. Additionally, courts evaluate whether an array is impermissibly suggestive by evaluating the content of the photo array itself in determining whether the defendant is the only individual resembling the description of the suspect. *See id.*

At Johnson's request, the trial court conducted a hearing outside the presence of the jury to consider whether the pre-trial identification procedure was impermissibly suggestive. Detective Otis testified about the procedure he followed in preparing the photo array. Detective Otis used a computer program to generate photographs of people having the same or similar characteristics as Johnson. According to Detective Otis, all of the photographs contained African American males who were the same size, had the same type and color of hair, and had the same type of facial hair. Detective Otis testified that there was nothing unique or different about Johnson's picture that suggested he was the suspect. In reviewing the array, we conclude the photographs depict men with similar features and that

6

the array does not suggest that Johnson was a suspect in the robbery. Also, Detective Otis explained that when he showed J.N. and Officer Nguyen the array, he did not suggest that Johnson was the suspect. While Johnson's principal complaint is that another suspect was omitted from the array, the record includes testimony that police procedures called for only one suspect to be placed in a given array. Detective Otis explained: "Well, I couldn't put him in this photo lineup. That's computer-generated. I would have had to get another photo lineup together with his photo."

Based on the testimony of Detective Otis, and the characteristics of the men depicted in the photo array containing Johnson's photo, the trial court found that the array was not impermissibly suggestive. In support of its decision to admit the testimony regarding the array, the trial court found the photo array depicted six men of the same race with similar features, and found "there's nothing odd or unique about any of the circumstances surrounding their facial appearance or their clothing that would stick out and point to that person in particular as being unique or different."

Considering all of the circumstances regarding the array, we conclude that the omission of another suspect from the array did not render the array suggestive. *See Barley*, 906 S.W.2d at 33 (holding that array of six males with similar features and of similar heights was not suggestive). As a result, we conclude the trial court

properly admitted the testimony of the witnesses who identified Johnson in the photo array. We further conclude that the array did not create a substantial likelihood that Johnson was irreparably misidentified by J.N. when he testified at trial. *See Webb*, 760 S.W.2d at 269. Johnson's first three issues are overruled.

In issue four, Johnson argues the trial court should have granted his request for a mistrial because the State elicited testimony from a witness indicating that Johnson had been in jail prior to trial. The State argues that Johnson did not lodge a timely objection to the testimony at issue. As a prerequisite to presenting a complaint for appellate review, the rules of error preservation require the record to show that the complaint was made to the trial court by a timely request, objection, or motion. *See* Tex. R. App. P. 33.1(a). "In accordance with Rule 33.1, a motion for mistrial must be both timely and specific." *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007) (citing *Young v. State*, 137 S.W.3d 65, 65-66 (Tex. Crim. App. 2004)). "A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent." *Id.* (citing *Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex. Crim. App. 1994)).

The record shows that D.C., a witness called by Johnson, testified on direct examination that he gave Johnson a ride home from work on the day the robbery occurred. During cross-examination, the prosecutor asked D.C whether he had visited Johnson at the jail in the previous month and in the last few days;

8

responding to the questions, D.C. answered: "Yes, sir." Johnson failed to object when the prosecutor asked whether the witness had visited Johnson at the jail. During defense counsel's redirect examination, D.C. explained that he and Johnson were friends, that it was not uncommon that they would give each other rides, and that he visited with his friends.

Only after having asked several follow-up questions, Johnson's counsel moved for a mistrial. The trial court denied the motion; nevertheless, the trial court instructed the jury that the fact a person is in jail awaiting trial should not be used as an indication of guilt and that the fact a person cannot make a bond requires they await trial in jail. The trial court's lengthy instruction included the following:

> [I]f there is evidence in regards to the Defendant and this witness having discussions while in jail, do not infer that if it's implied that the Defendant might have been in jail that is not meant in any way to be an indication of guilt in this case or for any other purpose, but is normal and customary for folks who are charged with felony offenses who are unable to post a bond, for example. And there are other reasons that there might be a discussion between these two while in the jail that are just as [innocuous.] And there is nothing in this record that should suggest or imply or infer to you nor should you consider that discussion at a location such as in the jail to be an indication of the guilt in any way of the Defendant for this charge.

In Johnson's case, the grounds on which Johnson requested the trial court to grant a mistrial first became apparent during the State's cross-examination of D.C. Yet, Johnson waited until after he re-examined the witness to move for mistrial. Because Johnson did not object when the prosecutor questioned the witness about

9

visiting Johnson in jail, we hold that Johnson's motion for mistrial was untimely and the trial court was not required to grant it. *See id.*

Johnson argues that admitting testimony about D.C. visiting with Johnson at the jail constitutes incurable error. But, the cases upon which he relies involved defendants who made timely objections. *See Williams v. State*, 643 S.W.2d 136, 137 (Tex. Crim. App. 1982); *Priest v. State*, 282 S.W.2d 390, 391 (Tex. Crim. App. 1955); *Salinas v. State*, 175 S.W.2d 253, 254 (Tex. Crim. App. 1943); *Ulmer v. State,* 292 S.W. 245, 245-46 (Tex. Crim. App. 1927). Although Johnson has not cited authority showing that the alleged error at issue constitutes fundamental error, there are some errors that are considered so fundamental to the right to a fair trial that the usual error preservation rules are not applied. *See* Tex. R. Evid. 103(d) (authorizing appellate courts to take notice of fundamental errors affecting substantial rights which have not been preserved for appeal).

Nevertheless, we are not persuaded that the admission of the testimony at issue constituted fundamental error. First, Johnson has not argued that the fundamental error doctrine applies to the issue raised in his appeal. Moreover, we presume the jury followed the trial court's instruction, so the fundamental error doctrine does not apply. *See Gardner v. State*, 730 S.W.2d 675, 696-97 (Tex. Crim. App. 1987) (holding that testimony that appellant had been to the penitentiary was

not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard).

We conclude that the trial court did not err in overruling Johnson's untimely motion for mistrial. Having overruled all of Johnson's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on December 27, 2012
Opinion Delivered April 10, 2013
Do Not Publish

Before Gaultney, Kreger, and Horton, JJ.

11