In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00137-CR**
_____

**MANUEL FERNANDO VENEGAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-03-04083-CR**

**MEMORANDUM OPINION**

A jury convicted appellant Manuel Fernando Venegas of sexual assault of a child and assessed punishment at eight years of confinement. In four appellate issues, Venegas complains that the trial court erred by denying his request to cross-examine the complainant to establish bias and motive, overruling his motion to suppress, and by admitting hearsay testimony. We affirm the trial court's judgment.

1

# BACKGROUND

In November 2016, the complainant, A.O., and her friend, M.S., were walking down the road when Venegas pulled over and asked if they needed a ride. Despite not knowing Venegas, A.O. and M.S. got into Venegas's car and told him that they were looking for drugs. A.O. and M.S. went with Venegas to his apartment, and Venegas gave an acid tab to A.O. and methamphetamine to M.S. A.O. testified that after she and M.S. used Venegas's phone to post on Snapchat, Venegas took them back to A.O.'s apartment. A.O. explained that she and M.S. continued to walk around while they were high on drugs, and somehow, they met with Venegas again and went with him to the mall and then back to his apartment.

A.O. testified that when she and M.S. returned to Venegas's apartment, Venegas gave them alcohol and then he grabbed A.O. by the wrist and A.O. followed him into the bedroom. A.O. explained that when she was in Venegas's bedroom, Venegas removed her shorts and panties and forcefully had sex with her until A.O. told him to stop. A.O. testified that after the incident, she realized that she needed to "get out[,]" and Venegas took her and M.S. back to A.O.'s apartment. According to A.O., she was still on her "acid trip," and dazed and confused, but A.O. remembered the incident and knows that Venegas sexually assaulted her because she felt pain in her vagina the following day.

2

A.O. testified that after she got home, she was still hallucinating, and A.O. told her mom and her friend what had happened. A.O. also told a counselor about the incident, and the counselor reported the incident to the police. A.O. was fourteen years old and M.S. was seventeen years old when the incident occurred. A.O. testified that when she went to the hospital to have a rape kit done, she felt like it was too late because she had already showered. A.O. explained that she was a drug addict and agreed that she had not always cooperated in pursuing the case, but A.O. wanted Venegas to pay for sexually assaulting her.

A.O. was unable to identify Venegas in a photo lineup, but A.O. identified Venegas at trial and testified that she had no doubt that it was Venegas who sexually assaulted her. M.S. identified Venegas both in a photo lineup and at trial. The police used surveillance video from the apartment complex and the phone number that Venegas gave A.O to identify Venegas. The jury found Venegas guilty of sexual assault of a child.

## ANALYSIS

In issues one and two, Venegas argues that the trial court erred by denying his request to cross-examine A.O. concerning her deferred adjudication for theft and a pending drug charge to establish A.O.'s bias or motive for testifying. According to Venegas, because A.O.'s unlawful conduct would have constituted a violation of the

3

terms of her deferred adjudication, it was highly probable that A.O. was testifying with an understanding or hope of leniency. The State contends that Venegas failed to establish a logical connection between A.O.'s juvenile record and her potential motive to fabricate the sexual assault allegation or her alleged bias in favor of the State.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016). A trial court abuses its discretion if its decision falls outside the zone of reasonable disagreement. *Id.* at 83. A defendant's Sixth Amendment right to confront witnesses includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying for the State. *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). However, a trial court possesses wide latitude to impose reasonable limits on cross-examination "'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.'" *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

A witness who is on probation, has pending charges, or has some other vulnerable status is not automatically subject to cross-examination as to that status. *Id.* at 152. When a witness's "vulnerable relationship" is based on pending charges or probationary status, the cross-examiner must establish some causal connection or logical relationship between the pending charges or probationary status and the witness's potential bias or prejudice for the State and for testifying as she does. *Id.* at 145, 147-48. A defendant who cannot establish a causal connection has essentially failed to demonstrate that the evidence he seeks to introduce is relevant to the allegation of bias. *Johnson v. State*, 433 S.W.3d 546, 552 (Tex. Crim. App. 2014).

The record shows that prior to A.O. testifying at trial, the State argued that under Rule 609 of the Texas Rules of Evidence, the trial court should exclude Venegas from mentioning A.O.'s prior theft offense and that A.O. was in juvenile custody for possession of a controlled substance. *See* Tex. R. Evid. 609. Venegas's counsel objected and argued that he was entitled to question A.O. about her prior theft and treatment, and about whether A.O. had made any deals with the district attorney's office. At that point, the prosecutor represented to the trial court that A.O. had not been given any kind of deal or favorable treatment for participating in the case, and the prosecutor argued that A.O.'s juvenile criminal history was not relevant. A.O.'s juvenile attorney also represented that A.O. had not received any

deals. The trial court noted that the county attorney's office handles juvenile prosecutions, not the district attorney's office, and the trial court found that evidence concerning A.O.'s juvenile criminal history was inadmissible for all purposes unless something opened the door. The trial court denied defense counsel's requests.

To demonstrate that the evidence of A.O.'s juvenile criminal history was relevant to his allegation of bias, Venegas had to show there was a logical connection between A.O.'s probationary status and pending charges and her potential motive for testifying in this case. *See Johnson*, 433 S.W.3d at 552; *Irby*, 327 S.W.3d at 148. Although Venegas argues that A.O. testified in the hope for leniency, Venegas has not provided evidence to support his assertion. *See Irby*, 327 S.W.3d at 149; *Carpenter v. State*, 979 S.W.2d 633, 635 (Tex. Crim. App. 1998). The record does not demonstrate that A.O. received any deals or expected to receive favorable treatment in exchange for testifying for the State, nor does the record indicate that A.O. cooperated with the State out of fear that her probation would be revoked. We conclude that Venegas has failed to show a logical connection between A.O.'s testimony and A.O.'s probationary status and pending charges. *See Irby*, 327 S.W.3d at 154. Accordingly, the trial court did not abuse its discretion by denying Venegas's request to cross-examine A.O. concerning her deferred adjudication and pending charges. *See Henley*, 493 S.W.3d at 82-83. We overrule issues one and two.

6

In issue three, Venegas argues that the trial court erred by denying his motion to suppress M.S.'s identification of Venegas both in-court and pretrial by photo array. Venegas argues that M.S.'s in-court identification was tainted by an impermissibly suggestive pretrial photo array. According to Venegas, the photo array was impermissibly suggestive because the photograph of Venegas has a different neckline view than the other five photographs in the array and because Venegas was the only individual with a mole. Venegas complains that these two distinctions set his photo apart from the others and called attention to his photo.

Because the determination of whether a photographic identification procedure was impermissibly suggestive does not turn on an evaluation of the credibility and demeanor of the witnesses, we review the mixed question of law and fact under a *de novo* standard. *See Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998). The procedures followed by police to create a photographic array can be challenged at trial if the array is impermissibly suggestive. *See Barley v. State*, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995). When a pre-trial identification procedure is so suggestive and conducive to mistaken identification, the subsequent use of that identification at trial denies the accused due process of law. *Id.* "An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification." *Luna v. State*, 268 S.W.3d 594, 605

7

(Tex. Crim. App. 2008). The test is whether, under the totality of the circumstances, the photographic identification procedure was so impermissibly suggestive as to create a very substantial likelihood of irreparable misidentification. *Id.* However, "a finding that a challenged pretrial identification procedure was not in fact impermissibly suggestive will obviate the need to assay whether under the circumstances it created a substantial likelihood of misidentification." *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).

Courts analyze the suggestiveness of a pre-trial photographic identification by examining the manner that police conducted the procedure, as well as the content of the array. *See Burns v. State*, 923 S.W.2d 233, 237-38 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). "Suggestiveness may be created by the manner in which the pre-trial identification procedure is conducted, for example by police pointing out the suspect or suggesting that a suspect is included in the line-up or photo array." *Barley*, 906 S.W.2d at 33. In determining whether an array is impermissibly suggestive, courts also evaluate the content of the photo array itself to determine whether the defendant is the only individual resembling the description of the suspect. *See id.*

The trial court conducted a hearing outside the presence of the jury to consider whether the pre-trial identification procedure was impermissibly suggestive.

8

Detective Adam Acosta of the Precinct 3 Constable's Office testified that Detective Eric Runyon asked him to prepare a photo array. Acosta explained that his office policy required him to read a form to the individual when he presented the array. Acosta also explained that the photo array, which included six photographs, was a blind photo lineup because he did not have any involvement in the case in general or know anything about the suspect. Acosta explained that Venegas's driver's license photo was included in the photo array. According to Acosta, Runyon gave him the photo array to present to M.S., and Acosta did not know if the suspect was in the array.

Acosta testified that he gave M.S. the instructions on the form and told her that the suspect may or may not be in the photo array. Acosta testified that M.S. identified Venegas as the suspect and indicated that her certainty was eight on a scale of one to ten. According to Acosta, he instructed M.S. that she could make a note of any characteristics about the photo that helped her to remember the suspect, and M.S. noted on the photo array "'hair, eyebrows, face structure and mole on his face.'" Acosta testified that more than one of the individuals in the photo array appeared to have a mole, and that generally, the individuals had the same hair color and facial features.

9

During the hearing, Venegas's counsel argued that the photo array was tainted because Venegas was the only individual in the photo array with a facial mole. After viewing the photo array, the trial court noted that all of the individuals in the photos "appear to have something[]" on their faces, either a mole or a discoloration. The trial overruled Venegas's objection to the photo array.

Based on Acosta's testimony, the characteristics of the men depicted in the array containing Venegas's photo, and considering all the circumstances surrounding the array, we conclude that the array was not impermissibly suggestive and that the trial court did not err by admitting testimony regarding M.S.'s pretrial identification of Venegas. *See id.* We further conclude that the array did not create a substantial likelihood that Venegas was irreparably misidentified by M.S. when she testified at trial. *See Webb*, 760 S.W.2d at 269. Accordingly, we hold that the trial court did not abuse its discretion by denying Venegas's motion to suppress. *See Amador* v. *State*, 275 S.W.3d 872, 878-79 (Tex. Crim. App. 2009); *Loserth*, 963 S.W.2d at 772. We overrule issue three.

In issue four, Venegas complains that the trial court erred by allowing a sexual assault nurse examiner (SANE) to testify about hearsay statements A.O. made during her forensic examination. According to Venegas, the SANE nurse failed to follow established protocol by not obtaining A.O.'s written consent for a forensic

examination. Venegas argues that because A.O. refused the sexual assault examination, A.O.'s statements to the SANE nurse are inadmissible hearsay because they were not made during an examination for medical treatment. *See* Tex. R. Evid. 803(4). The State contends that Venegas failed to preserve error because his hearsay argument on appeal does not comport with his objection at trial.

To preserve a complaint for appellate review, a party must make a timely objection "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" Tex. R. App. P. 33.1(a)(1)(A). Moreover, "the point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

The record shows that during trial, Venegas objected to the SANE nurse's qualifications as an expert. Specifically, Venegas objected that the SANE nurse was not qualified to testify about statements A.O. made during the SANE examination when the SANE nurse took A.O.'s medical history because the SANE nurse failed to follow protocol and obtain A.O.'s consent. The trial court overruled Venegas's objection and found that the SANE nurse was qualified.

Venegas's trial objections do not comport with the complaint he now raises on appeal. *See Wilson*, 71 S.W.3d at 349. Therefore, the issue was not preserved

11

for our review. *See* Tex. R. App. P. 33.1(a)(1)(A). We overrule issue four. Having overruled each of Venegas's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on April 12, 2019
Opinion Delivered May 29, 2019
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.