**Douglas Cordell FRANCIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–90–0075–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 21, 1990.

Rehearing Denied Dec. 13, 1990.

Mike Carnahan, Houston, for appellant.

John L. Davis, B. Warren Goodson, Galveston, for appellee.

Before ROBERTSON, CANNON and ELLIS, JJ.

## OPINION

ROBERTSON, Justice.

The jury rejected appellant's not guilty plea to murder and assessed punishment at confinement for life and a $10,000 fine. Issues on appeal concern the court's charge, failure to grant a motion in arrest of judgment, the excusal of three jurors, admissibility of seized evidence, lawfulness of state's investigative procedures, and effective assistance of counsel. We affirm.

While appellant does not challenge the sufficiency of the evidence, he contends in his first point of error that the trial court erred in failing to instruct the jury on voluntary manslaughter. Therefore, we will briefly review the evidence which, with the exception of appellant's own testimony, is basically not contested. The deceased and appellant, wife and husband respectively, had become estranged on February 19, 1988, and appellant had moved from their residence on Baker Street across from a public school in Dickinson. In response to a complaint that burglars had been breaking into the school, a police officer of Dickinson had gone to the school at approximately 11:30 p.m. on February 24th to install a portable burglar alarm in an effort to catch the burglars. As he was about ready to leave, he heard a sliding noise which he believed to be a burglary in progress. Taking up surveillance, he heard the noise again and saw appellant, shirtless and carrying something in his hand, on Baker Street in a fast walk or jog. Still believing him to be a burglar, the officer drove his patrol car to appellant. As appellant walked toward the police car, the officer, shining his light on appellant, saw that appellant was carrying a shirt drenched in blood and that appellant's pants were bloody. When the officer asked him where the blood came from, appellant replied "F__ you," turned and quickly walked away. When the officer told appellant he was not through talking to him, appellant repeated the expletive and started off in a run. The officer chased and tackled appellant.

The officer then saw that appellant was wet and the shirt he was carrying was wet

with blood and water. When appellant refused to identify himself, the officer retrieved appellant's billfold from his pants pocket and ascertained his name and address. The address was just across the street from the school grounds. Believing he should investigate further, he and a deputy sheriff proceeded to appellant's residence. They found no signs of forced entry but found an outside water faucet covered with an army blanket. The area was wet with diluted blood and water. After repeated knocks at the front door, the five year old son of appellant and the deceased, pale and scared, opened the door and asked the officer, "Can you help me find my mommy?" The officers entered the blood spattered home and found the still warm body of the deceased whose throat had been cut and who had been stabbed some 50 to 60 times, at the foot of her bed in her bedroom. From appellant's pocket the officers removed a bloody hunting knife. The blood on both the knife and appellant's clothing matched the blood of the deceased. In searching the area, the officers found appellant's sister's automobile, which he had borrowed sometime after 10 p.m., parked some three blocks away behind a dumpster. A search of the automobile revealed a complete set of clean clothes in a paper sack and an army jacket.

The state adduced other evidence, including admissions appellant had made, that he had killed the deceased. Appellant, testifying in his own behalf denied, however, that he killed his wife. While appellant admitted that he was at the residence, he stated that he blacked out and all he could remember was fighting with a silhouette, which was larger than himself.[1] Appellant continually referred to the silhouette as "he" throughout his testimony. Appellant reported hearing a gurgling noise and then finding his wife on the floor.

■ We disagree with appellant's contention that he was entitled to an instruction on voluntary manslaughter. It is well-settled that such a charge should be given only if there is evidence that the accused acted under the immediate influence of sudden passion arising from an adequate cause. *Marquez v. State*, 725 S.W.2d 217, 223 (Tex.Crim.App.1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). Since appellant denied that he killed the deceased, there is no factual basis for an instruction on voluntary manslaughter. *Keech v. State*, 707 S.W.2d 178, 185 (Tex.App.—Corpus Christi 1986, pet. ref'd). *Keech* is consistent with the holdings of the court of criminal appeals prior to the adoption of our present penal code that one who denied the killing was not entitled to an instruction on murder without malice. *Barrientez v. State*, 487 S.W.2d 97, 100 (Tex.Crim.App.1972); *Johnson v. State*, 336 S.W.2d 175, 180 (Tex. Crim.App.1960). Appellant's first point is overruled.

■ In his second point of error appellant contends the court's charge authorized the jury to find guilt on a theory not contained in the indictment. The indictment alleged a Tex.Penal Code Ann. § 19.02(a)(2) murder only. In submitting the case to the jury, the charge first instructed the jury on the provisions of the law and the judge there instructed the jury on the whole of Tex.Penal Code Ann. § 19.02(a)(1) and (2). However, in the portion of the charge applying the law to the facts, the court restricted the jury to the allegations of the indictment. This was proper. *Grady v. State*, 614 S.W.2d 830 (Tex.Crim.App.1981). Appellant's second point is overruled.

■ In his third point appellant contends the court erred in denying his motion in arrest of judgment. In this motion appellant, for the first time, attacked the sufficiency of the indictment, alleging that it was fundamentally defective. Initially the state challenges our consideration of the point on procedural grounds because the motion was not timely filed. We disagree. A motion in arrest of judgment must be filed within 30 days following sentencing. Tex.R.App.Proc. 34(a). Appellant was sentenced on September 29, 1989 and filed his motion in arrest of judgment 31 days later

1. The evidence shows that the deceased was considerably smaller than appellant.

on Monday, October 30, 1989. Under the provisions of Rule 5, Tex.R.App.Proc., since the 30th day fell on Sunday, October 29th, the period for filing the motion was extended to the end of Monday, October 30th.

■ However, the appellant was precluded from attacking the sufficiency of the indictment for the first time in his motion in arrest of judgment. Tex.Code Crim. Proc.Ann. art. 1.14(b); *Shaw v. State,* 728 S.W.2d 889, 890 (Tex.App.—Houston [1st Dist.] 1987, no writ). Appellant's third point is overruled.

■ In his fourth point of error appellant contends the trial court erred in excusing three prospective jurors. The record shows that after lengthy questioning by the prosecutor, the judge and defense counsel, Mrs. Booker steadfastly maintained that she could never, under any circumstances, rely upon circumstantial evidence to find a person guilty of any crime. Prospective juror Fields stated that he had been the deceased's science teacher in school, worked with her mother in school, knew her brothers and her sister, that the deceased had "made a very good impression on me" and that he was "afraid I might be slightly biased." Again, after extensive questioning by the trial judge, he stated "I think out of abundance of caution we ought to let you go in this case, Mr. Fields." Finally, prospective juror Wild stated he lived around the corner from the deceased and her family, had known the deceased and her family for "ten to fifteen years," had worked at Amoco with the mother and father of the deceased and had visited in their home and that based upon all these past associations he didn't believe he could be fair to the appellant. Again, he was excused by the trial judge. Appellant never objected to the excusal of any of the three prospective jurors. Having failed to object, appellant has waived the right to claim error. Tex.R.App.P. 52(a); *Boulware v. State,* 542 S.W.2d 677, 682–83 (Tex.Crim. App.1976), *cert. denied,* 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977). Appellant's fourth point is overruled.

■ In his fifth point of error appellant contends the trial court erred in denying his requested charge on reasonable doubt. The trial court's instruction on reasonable doubt read:

> In all criminal cases, the burden of proof is on the State and the defendant is presumed to be innocent until the defendant's guilt is established by legal evidence beyond a reasonable doubt; and, in case you have a reasonable doubt of the defendant's guilt, you will acquit the defendant and say by your verdict "not guilty."

Appellant requested an additional instruction, reading:

> The defendant is entitled to the benefit of any reasonable doubt of his guilt that may fairly and naturally arise from the evidence presented.

The trial judge's instruction followed Sec. 2.01, Tex.Penal Code and did not require amplification. *McGinty v. State,* 723 S.W.2d 719, 721 (Tex.Crim.App.1986) (en banc). Appellant's fifth point is overruled.

■ By his sixth point of error appellant contends the court committed fundamental error in admitting physical evidence obtained by a claimed illegal arrest. This is not fundamental error. Having failed to object to the admissibility of the evidence upon this ground, appellant has waived any claimed error. *Little v. State,* 758 S.W.2d 551, 563 (Tex.Crim.App.1988) (en banc). Appellant's sixth point is overruled.

■ In his seventh point of error appellant claims "the state's investigative procedures denied appellant due process of law and fundamental fairness." His claim is bottomed upon the district attorney discovering shortly before trial "that Kent Cramm had intercourse with the deceased at or about the time of her death" and not sharing this information with the defense or the court until trial. Appellant relies upon *Ex parte Brandley,* 781 S.W.2d 886 (Tex.Crim.App.1989), but fails to tell us how it applies, and we cannot discern how it does.

Kenneth Cramm testified at trial before the jury. He stated that he had known the deceased for several years and that they were both employed at the same company.

He stated that for approximately a month and a half or two months, he and the deceased had worked close together and had been required to work unusually longer hours. He stated that twice during that period of time they had had a drink together after work. At 7 p.m. on the evening of her death, he and the deceased met and, parted at sometime before 10 p.m., after they had sexual intercourse.

On motion for new trial appellant developed that Cramm had told the prosecutor about a week prior to trial about the sexual encounter but that the prosecutor had not revealed this fact to appellant's counsel. However, the prosecutor stated that appellant's trial counsel was the one who had first brought Cramm into the picture when he (defense counsel), some seven or eight months prior to trial, stated to the prosecutor that Cramm was "a paramour and should be looked at."

At trial appellant testified before the jury concerning discussions he stated he and the deceased had concerning her desire to have other sexual partners. Appellant stated that he feared she might contract a sexually transmitted disease and requested that she purchase prophylactics. When she stated that she would be embarrassed to do so, he testified that he purchased a large package, giving her half of them and keeping the remainder for himself.

We fail to understand appellant's complaint. First, since, appellant was aware of Cramm he cannot claim that the prosecutor suppressed evidence. Second, appellant does not allege that the evidence of Cramm's sexual intercourse with the deceased was material and, again, we cannot discern its materiality. Appellant specifically stated in his testimony at trial that he was not contending that Kent Cramm was the "silhouette" in his house. We, therefore, find appellant's contention to be without substance and, accordingly, overrule it.

■ Finally, in his eighth point of error appellant contends he was denied effective assistance of counsel at trial. Appellant's counsel faults trial counsel for: (1) failing to challenge the legality of appellant's arrest and subsequent search; (2) failing to file a motion to quash the indictment; (3) failing to request an instructed verdict of not guilty; (4) failing to move for a continuance or mistrial because of Cramm's testimony; (5) failing to object to excusal of the three prospective jurors; (6) failing to object to the court's charge; (7) failing to make offer of proof of the opinions of appellant's expert witnesses and for (8) calling appellant as a witness.

This record presents a classic example of the absurdity of the majority of charges of ineffective assistance of counsel. Appellate counsel does nothing more than assert his laundry-list of what he denominates short-comings of trial counsel. He presents no evidence nor any reasoning to support his charges.

The supreme court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), held that not only must the defendant show that counsel's performance was so deficient that he was not functioning as acceptable counsel but that he must go further and show that counsel's deficient performance prejudiced his defense. Texas has adopted this test, *Derrick v. State*, 773 S.W.2d 271 (Tex. Crim.App.1989). The burden is upon the defendant to prove his charge by a preponderance of the evidence. *Moore v. State*, 694 S.W.2d 528, 539 (Tex.Crim.App.1985) (en banc). Further, *Strickland* established a presumption that counsel's conduct falls within the wide range of reasonable professional assistance and that trial counsel's challenged actions constitute sound trial strategy.

Appellant has not even *attempted* to satisfy the first prong of the *Strickland* test. He does not allege or tell us how on each of the charges he makes against trial counsel that such counsel was so deficient in performance that he was not functioning as acceptable counsel. We, therefore, find that it is unnecessary to discuss his *allegations* further. Appellant's eighth point of error is overruled.

The judgment is affirmed.