

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00153-CR

_____

CASEY RAY TILLER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 32,056

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Chief Justice Morriss

## O P I N I O N

A Hunt County jury convicted Casey Ray Tiller of two counts of aggravated sexual assault of a child. After the jury found the State's enhancement allegation true, Tiller was sentenced to seventy-five years' imprisonment on each count. On appeal, Tiller argues that the jury charge was erroneous because it allowed for non-unanimous verdicts and that his counsel rendered ineffective assistance throughout the trial.

We conclude (1) that the erroneous jury charge did not egregiously harm Tiller and (2) that Tiller has not shown that counsel rendered ineffective assistance. Accordingly, we affirm the trial court's judgment.

The State's two-count indictment alleged that Tiller, (1) on or about January 1, 2011, "intentionally and knowingly cause[d] the penetration of the sexual organ of Jane Doe . . . , a child who was then under 14 years of age, by the defendant's finger," and (2) on or about January 1, 2012, "intentionally and knowingly cause[d] the penetration of the sexual organ of Jane Doe . . . by the defendant's sexual organ."[1]

Jane's mother, Sue, testified that Tiller moved in with her when Jane was five. Thomas Patterson, a deputy with the Rain's County Sheriff's Office, testified that, in 2013, Tiller, while high on methamphetamine and suicidal, turned himself in for masturbating in front of Jane. Sue testified that officers came to her home to investigate Tiller's admission, but that Jane denied that any inappropriate activity occurred. According to Patterson, because the investigation of Tiller's

---

[1]We will use pseudonyms to protect the identity of the children involved. *See* TEX. R. APP. P. 9.10.

2

admission of an indecent act did not yield enough information, Tiller was jailed only for public intoxication.

After the police concluded their investigation into Tiller's admission, Sue testified that she received a telephone call from Jane's middle school principal, who reported that Jane was telling others she was having sex with Tiller. Sue again questioned Jane, who claimed that her friends were just making up stories. Several years later, when Jane's high school teacher told Sue that she overheard girls talking about Jane and Tiller, Sue testified that Jane finally admitted that Tiller "molested her . . . all the time." Jane's friends, Gabby and Horace, both testified that Jane indicated Tiller had engaged in inappropriate sexual acts with her.

Jane, who was thirteen years old at the time of trial, testified that Tiller began kissing and touching her underneath her underwear on a daily basis when she was seven. She clarified that Tiller touched the inside of her vagina with his fingers on many occasions and described two of those instances in detail for the jury, one occurring when she was seven and another occurring when she was thirteen. Jane also testified that Tiller penetrated her vagina with his sexual organ more than 100 times and described, in detail, an incident that occurred when she was twelve years old. Jane said she denied the abuse for many years because she did not want to get in trouble.

Danielle Sanchez, a sexual assault nurse examiner (SANE), testified that she examined Jane, who reported that Tiller forced her to have sex with him. According to Sanchez, Jane said that the abuse began when she was around six years old and ended when she was twelve, Tiller abused only her sexual organ, and he "put his penis in [her] . . . daily."

Tiffany Williams, Tiller's ex-girlfriend, testified that their relationship ended after her eleven-year-old daughter, Mary, said Tiller "had stuck his hands down her pants and touched her." At trial, Mary testified that Tiller touched the inside of her sexual organ under her clothing with his fingers.

Tiller testified in his defense, denying the allegations. The State cross-examined Tiller on drug- and alcohol-related convictions.

The application paragraph of the court's charge tracked the language of the indictment, instructed the jury that their verdict was generally required to be unanimous, but failed to inform the jury that it was required to be unanimous about which instance of criminal conduct satisfied each charged offense. The jury found Tiller guilty on both counts of aggravated sexual assault.

*(1)    The Erroneous Jury Charge Did Not Egregiously Harm Tiller*

We employ a two-step process in our review of alleged jury charge error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007)). "The purpose of the jury charge . . . is to inform the jury of the applicable law

4

and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id.* (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

"Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed." *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). "This means that the jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). "[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Id.* at 772. Because "[e]ach of the multiple incidents individually establishes a different offense or unit of prosecution, . . . [t]he judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented." *Id.*

In this case, the State's evidence at Tiller's trial included more than one instance of aggravated sexual assault to support each count for which Tiller was convicted. Thus, "[t]he jury could have relied on separate incidents of criminal conduct, which constituted different offenses or separate units of prosecution" in finding Tiller's guilt. *Id.* at 774. Therefore, the trial court was required to instruct the jury that it had to be unanimous as to the single unit of prosecution. *See id.*; *Arrington v. State*, 451 S.W.3d 834, 839 (Tex. Crim. App. 2015). Because it submitted only a general unanimity instruction, "[t]he jury may have believed that it had to be unanimous about the offenses, not the criminal conduct constituting the offenses." *Cosio*, 353 S.W.3d at 774. Since

5

this created the possibility of a non-unanimous verdict, the jury charge was erroneous. *See id.*; *Arrington*, 451 S.W.3d at 839.

We next determine whether Tiller was harmed by the lack of a proper unanimity instruction. The level of harm necessary to require reversal due to jury charge error is dependent on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. Here, because Tiller did not object to the charge, we will not reverse unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)), such that he did not receive a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.).

"An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington*, 451 S.W.3d at 840 (quoting *Cosio*, 353 S.W.3d at 777). "Actual harm is established when the erroneous jury instruction affected 'the very basis of the case," 'deprive[d] the defendant of a valuable right,' or '"vitally affect[ed] a defensive theory.'" *Id.* (quoting *Cosio*, 353 S.W.3d at 777 (quoting *Almanza*, 686 S.W.2d at 171)). In making this determination, we review "the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole." *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171). Direct evidence of harm is not required to establish egregious harm. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

A review of the entire charge weighs in favor of finding egregious harm. The charge "permitted non-unanimous verdicts based on the evidence presented in the case," and the "only mention of the word 'unanimous' . . . was the boilerplate language regarding selection of the jury foreman that required the foreman to certify the jury's verdict 'when [the jury had] unanimously agreed upon a verdict.'" *Arrington*, 451 S.W.3d at 841 (quoting *Arrington v. State*, 413 S.W.3d 106, 112 (Tex. App.—San Antonio 2013), *rev'd on other grounds by Arrington*, 451 S.W.3d 834). Moreover, the error affected each count on which Tiller was convicted. *See id.*

As for the state of the evidence, Jane's testimony alone was sufficient to support the jury's verdicts. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2018). Except for Tiller, testimony from every other witness also supported a finding of guilt. Weighing in Tiller's favor was his own testimony wholly denying the allegations and a lack of physical evidence or medical evidence from Jane's SANE examination. Thus, the state of the evidence revealed a "he said, she said" situation between Jane and Tiller. *See Arrington*, 451 S.W.3d at 841. Tiller's decision to testify "left the jury with an all-or-nothing decision, either he was guilty or he was not." *Id.* at 842. Had the jury believed Tiller's version of events, it would have acquitted him. *See id.* at 844. Because the jury's verdict of guilt demonstrated their rejection of Tiller's defensive theory, the state of the evidence factor weighs against a finding of egregious harm. *See id.* at 842, 844 (citing *Ruiz*, 272 S.W.3d 819, 826–27 (Tex. App.—Austin 2008, no pet.)); *Cosio*, 353 S.W.3d at 777–78.

The arguments of counsel reveal that neither party added to the charge error by telling the jury it did not have to be unanimous about the criminal conduct constituting the offense. The parties also did not ameliorate the error by explaining what was required for a unanimous verdict.

Accordingly, this factor is neutral. *See Arrington*, 451 S.W.3d at 844. Further, after reviewing the entire record, we find no other relevant information favoring a finding of egregious harm.

Here, as in *Arrington* and *Cosio*, "the only factor that weighs in favor of finding egregious harm is the consideration of the jury instructions." *Id.* at 845 (citing *Cosio*, 353 S.W.3d at 777–78). As in those cases, "[a]lthough the instructions failed to identify the particular acts necessary to support each count, the evidence in the entire record and the analytical meaning of the jury's verdicts in the aggregate show that the erroneous instructions did not cause actual harm to appellant." *Id.*; *see Cosio*, 353 S.W.3d at 778. Because we conclude Tiller was not egregiously harmed by the jury charge error, we overrule Tiller's first point of error.

*(2)   Tiller Has Not Shown that Counsel Rendered Ineffective Assistance*

As many cases have noted, the right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*. 466 U.S. 668, 687–88 (1984); *see also Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009). The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second *Strickland* prong, sometimes referred to as "the prejudice prong," requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability" is defined as

8

"a probability sufficient to undermine confidence in the outcome." *Id*. Thus, in order to establish prejudice,

> an applicant must show "that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result was reliable." [*Strickland*, 466 U.S.] at 687. . . . It is not sufficient for Applicant to show "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693 . . . . Rather, [he] must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695 . . . .
>
> . . . .
>
> The applicant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Busby v. State*, 990 S.W.2d 263, 269 (Tex. Crim. App. 1999). The reviewing court must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. In all cases, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Id.* at 696.

*Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). Allegations of ineffectiveness "must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). The *Strickland* test "of necessity requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 382 (2000) (quoting *Wright v. West*, 505 U.S. 277, 308 (1992) (Kennedy, J., concurring in judgment)).

The Texas Court of Criminal Appeals has said that "[t]rial counsel 'should ordinarily be afforded an opportunity to explain his actions' before being denounced as ineffective." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Where the reviewing court "can conceive potential reasonable trial strategies that counsel could have been pursuing," the court "simply cannot conclude that counsel has performed deficiently." *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). Where an appellate record is silent as to why trial counsel failed to take certain actions, the appellant has "failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Tiller's brief lists the rules of evidence for hearsay, outcry witness testimony, character evidence, and impeachment of a witness by prior criminal conviction. Then, the brief contains the following laundry list of counsel's alleged ineffectiveness:

> (1) allowing the admission of Tiller's interview without an objection to hearsay or "improper character evidence . . . under Texas Rule of Evidence 404(b) and article 38.37," (2) allowing Williams to testify that Tiller had inappropriately touched Mary without requesting an outcry hearing or a limiting instruction, (3) allowing Mary's testimony without requesting a limiting instruction, (4) allowing Patterson's testimony about Tiller's admission to police and the fact he was jailed for public intoxication, (5) allowing Sue's testimony about her interaction with police officers without objections of hearsay and improper character evidence, (6) allowing Sue's testimony about Tiller's drug use without an objection to improper character evidence and a request for an instruction to disregard, (7) allowing Sue's testimony about hearsay statements made to a principal and substitute teacher without objections or request for a limiting instruction, (8) allowing Sue's testimony that Jane said Tiller "molested her" without an outcry hearing or hearsay objection, (9) "[f]ailing to request [sic] to the leading nature of the State's questions to" Jane, (10) failing to object to the admission of the State's timeline "for all purposes rather than as a summary of the testimony or for demonstrative purposes," (11) failing to

object to Gabby's testimony speculating what [Jane] meant by saying "he touched [her] in places he shouldn't have," (12) failing to object to Gabby's statements concerning why Jane did not tell her mother about the abuse on the ground of speculation, (13) failing to object to the State's leading question "that [Jane] also didn't tell because she didn't want to ruin their relationship and didn't want to get in trouble," (14) failing to require the State to make an election on each of the counts in the indictment, (15) allowing the State to cross-examine Tiller about his criminal history without objecting under Rule 609 and requesting a hearing outside of the jury's presence, (16) "failing to request a limiting instruction on proper evidence of Rule 609 evidence at the time of its admission," (17) allowing the State to cross-examine Tiller about "the events of August 3, 2013," (18) failing to request that the jury charges contain a proper unanimity instruction and a Rule 609 instruction, (19) failing to object "to improper jury argument by the State concerning the 38.37 paragraph pertaining only to [Mary]," (20) failing to object to the improper jury argument that the jury could find Tiller guilty on both counts because there was evidence that the offense "occurred over 100 times."

Tiller bears the burden of proving that his counsel was ineffective. A laundry list recitation of alleged ineffectiveness does not meet this burden. *Francis v. State*, 801 S.W.2d 548, 552 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). This is because such a list does "not even *attempt* . . . to satisfy the first prong of *Strickland.*" *Id.* As in *Francis*, Tiller "does not allege or tell us how on each of the charges he makes against trial counsel that such counsel was so deficient in performance that he was not functioning as acceptable counsel." *Id.* Based on this silent record, which does not contain counsel's reasoning for the various laundry-list actions or omissions, we conclude Tiller has not met his appellate burden to demonstrate ineffective assistance under the first *Strickland* prong. *See id.* Additionally, Tiller fails to analyze how the laundry list of actions or omissions by counsel created a probability sufficient to undermine confidence in the jury's verdict, as required by the second *Strickland* prong.

We overrule Tiller's last point of error because he has not met the first and second prongs of *Strickland.*

11

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     April 2, 2019
Date Decided:       April 15, 2019

Publish