

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00097-CR

_____

LOGAN WESLEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 20F0054-202

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

Logan Wesley[1] was charged with sexually assaulting Sylvia Hanes, Jamie Cook, and Jane Parker when they were children.[2]  The charges related to all three victims were tried in a single, consolidated jury trial in Bowie County, Texas.[3]  In total, the jury found Wesley guilty of five counts of aggravated sexual assault of a child, nine counts of sexual assault of a child, and two counts of indecency with a child by contact.  The trial court sentenced Wesley to five life sentences and 220 years in prison, with the sentences to run consecutively.

Here, Wesley appeals from his seven convictions related to Jamie Cook:  two counts of aggravated sexual assault of a child under fourteen years of age and five counts of sexual assault of a child.  Wesley argues that (1) the trial court's failure to include a specific unanimity charge in the jury instructions was egregiously harmful, (2) the judgments should be modified to reference the correct provisions of the Texas Penal Code, and (3) there is legally insufficient evidence to support his two convictions for aggravated sexual assault of a child under fourteen years of age.

---

[1]Other documents in the clerk's record refer to appellant as Logan Wesley, III, yet, the judgment only refers to Logan Wesley.  Nevertheless, appellant did not argue at trial that he was not the person identified in the indictment, and he does not argue in this appeal that he is not the same person identified in the judgment.

[2]To protect the identity of the victims, who were minors at the time of the alleged abuse, we refer to them by pseudonyms.  *See* TEX. R. APP. P. 9.10(a)(3).

[3]The convictions related to victim Hanes are on appeal under our cause number 06-20-00096-CR and include three counts of aggravated sexual assault of a child under fourteen, three counts of sexual assault of a child under seventeen, and one count of indecency with a child by contact.  The convictions related to victim Cook are on appeal under our cause number 06-20-00097-CR and include two counts of aggravated sexual assault of a child under fourteen and five counts of sexual assault of a child under seventeen.  The convictions related to victim Parker are on appeal under our cause number 06-20-00098-CR and include one count each of indecency with a child by contact and sexual assault of a child.

We modify the trial court's judgments to recite the correct statutes of offenses, and we affirm the judgments, as modified, because the trial court's jury charge error did not cause Wesley egregious harm and the evidence supporting Wesley's convictions for aggravated sexual assault of a child under fourteen years of age is supported by legally sufficient evidence.

The factual and procedural background, including the testimony and evidence produced during the trial of this case, were detailed in this court's opinion, issued on this date, in *Wesley v. State*, cause number 06-20-00096-CR.

## I.      Legal Sufficiency

In his first point of error, Wesley contends that there is legally insufficient evidence to support his two convictions for aggravated sexual assault of a child under the age of fourteen years.

### A.      Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous legal sufficiency review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve

3

conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Under a hypothetically correct jury charge, the State was required to prove that Wesley intentionally or knowingly caused the penetration of Cook's sexual organ, that Cook was younger than fourteen years of age at the time, and that the offense occurred in Bowie County, Texas. *See* TEX. PENAL CODE ANN. §§ 1.04, 22.021(a)(1)(B)(i), 22.021(a)(2)(B); *see also King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Here, Wesley argues that there is legally insufficient evidence to support his two convictions for aggravated sexual assault of a child younger than fourteen because there is insufficient evidence that count one of the indictment— referred to here as the "dead-end road" assault—occurred in Bowie County, Texas, and there is insufficient evidence that Cook was under the age of fourteen at the time of the events alleged in

4

count two of the indictment—referred to here as the first Martin Resources assault.[4] Wesley does not challenge the remaining elements, and therefore, we do not address them.

### B. Count One—Location of the Assault

Wesley contends that the evidence was legally insufficient to support the jury's finding that the allegations of count one—the "dead-end road" assault—occurred in Bowie County, Texas. Cook testified that, when she was still thirteen years old, Wesley had "taken everybody home" after church except for her, and he drove to the end of a dead-end street and penetrated her vagina with his penis, an act he performed more than twice while she was thirteen years old. Cook testified, "[A]s we were leaving, our -- the car collided with another car. So there was a car crash, and he . . . began chasing the car up Euclid, and the car . . . got away, and so he took me home." The State asked her, "You're 13 years old. He's taking you down a dead-end road, and you said Euclid?" to which Cook responded, "Uh-huh (yes)." Cook agreed that Euclid, "off South State Line," was in Bowie County, Texarkana, Texas.

Wesley argues that the "dead-end road" offense could not have occurred in Bowie County, Texas, because Cook's answer affirmed that the offense occurred on Euclid, a street he claims only exists wholly in the State of Arkansas.[5] We disagree. Even assuming that Wesley is correct regarding Euclid Street's location, there is legally sufficient evidence from which the jury could have inferred that the assault occurred in Bowie County, Texas, and that Cook's testimony

---

[4]Wesley conceded that counts one and two of the indictment were identical allegations, and therefore, for the Court's convenience, he challenges the two most fact specific situations elicited from the testimony with the understanding that either situation could be applied to either count of the indictment.

[5]The State contends that Wesley's argument is a challenge to venue and, because it was not raised at trial, was waived on appeal. However, it is not a venue issue because Wesley argues that the offense occurred in a different state rather than a different Texas county.

about Euclid Street identified where Wesley chased the other car after the assault was completed. Specifically, Cook testified that the assault itself occurred at the end of a dead-end road. There was no evidence that Euclid was a dead-end street. Detective Smith testified that Cook told her that the assault occurred "at the end of a dead-end road somewhere on the Texas side, out around there." Based on an investigation of the area, Smith deduced that the assault occurred at the dead-end of DeLoach Street, which is in Bowie County, Texarkana, Texas, and that the collision occurred on or near Euclid while Wesley and Cook were "en route from that area back to Mary Street" in Texarkana, Arkansas, where Cook was dropped off at home.

Here, the jury was faced with evidence that could give rise to competing inferences, but resolving evidentiary conflicts is the jury's function. *Pierson v. State*, 398 S.W.3d 406, 421 (Tex. App.—Texarkana 2013), *aff'd*, 426 S.W.3d 763 (Tex. Crim. App. 2014); *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). As the judge of witness credibility, the jury was free to reject the available inference that the assault occurred on Euclid, accept the testimony and inference that the assault occurred on a nearby dead-end road, and believe Smith's testimony that the assault occurred on the dead-end road identified by Smith to be in Bowie County, Texarkana, Texas. *See Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. stricken) (citing *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993)). Viewing all the evidence in a light most favorable to the verdict, we find that the evidence was legally sufficient to prove that the offense occurred in Bowie County, Texas. Accordingly, we overrule this point of error.

## C. Count Two—Age of the Victim

Wesley also contends that the evidence was legally insufficient to support the jury's finding that Cook was younger than fourteen years of age at the time of the first Martin Resources assault. During direct examination, Cook specifically testified regarding what happened at Martin Resources, where that was located, and how old she was when it happened:

> [The State]: . . . Did he ever take you to any of his places of employment?
>
> [COOK]: Yes.
>
> [The State]: Okay. Tell the jury about that.
>
> [COOK]: He took me multiple times to his job. The name of his job is Martin Resources, and it's in Nash, Texas.
>
> [The State]: Okay. Is Nash, Texas, in Bowie County, Texas?
>
> [COOK]: I believe so.
>
> . . . .
>
> [The State]: When he would take you to Martin Resources, was this before and after your 14th birthday?
>
> [COOK]: Yes.
>
> [The State]: Okay. If you had to take a guess for the jury, about how many times would you say he carried you to Martin Resources?
>
> [COOK]: I would say maybe about 15 to 20 times.
>
> [The State]: . . . And at the time that y'all were in Martin Resources, would he penetrate your sexual organ with his sexual organ?
>
> [COOK]: Yes.
>
> . . . .

7

[The State]: . . . Now 15 to 20 times at Martin Resources before and after your 14th birthday; is that fair?

[COOK]: Uh-huh (yes).

Cook's testimony alone, if believed by the jury, was sufficient evidence for the jury to find beyond a reasonable doubt that she was younger than fourteen years old when Wesley took her to the Martin Resources office in Bowie County, Texas, and penetrated her vagina with his penis. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Supp.). "Because in a jury trial the jury serves as the exclusive judge of the credibility of witnesses and of the weight to be given their testimony, the jury is free to accept or reject any or all of any witness's testimony and reconcile any conflicts in the evidence." *Duren*, 87 S.W.3d at 724 (citing *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993)). Here, the jury apparently believed Cook's testimony and rejected any conflicting evidence or relevant challenge to Cook's credibility. Therefore, viewing the evidence in the light most favorable to the verdict, we overrule this point of error.

## II. Specific Unanimity Instruction

In his next point of error, Wesley contends that the trial court's failure to include a specific unanimity instruction requiring the jury to unanimously agree on what specific conduct constituted each specific count caused egregious harm.

### A. Standard of Review

"We employ a two-step process in our review of alleged jury charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and

then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 36.13). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Id.* (quoting *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id.* (quoting *Lee*, 415 S.W.3d at 917 (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007))).

### B. The Jury Charge

The indictment alleged the following offenses: (a) counts one and two of the indictment alleged aggravated sexual assault of a child younger than fourteen years of age by penetrating Cook's sexual organ with his sexual organ, (b) count three alleged sexual assault of a child by penetrating her sexual organ with his sexual organ, (c) count four alleged sexual assault of a child by causing the penetration of her mouth by his sexual organ, (d) count five alleged sexual assault of a child by penetrating her sexual organ with his sexual organ, (e) count six alleged sexual assault of a child by contacting her sexual organ with his mouth, and (f) count seven alleged sexual assault of a child by contacting her anus with his sexual organ. Here, the

9

application paragraphs of the court's charge tracked the language of the indictment, but the only mention of unanimity is made in the closing paragraph of the charge, stating, "Your verdict must be unanimous, and when reached, you will notify the bailiff in the manner instructed and the Court will send for you and your verdict will be received in open court." Wesley concedes that he did not object to the unanimity instruction, but he argues that the trial court erred because the charge failed to inform the jury that it was required to be unanimous about which instance of criminal conduct satisfied each charged offense.[6]

"Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed." *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). "This means that the jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). "[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Id.* at 772. However, when more than one incident of criminal conduct could be relied on for conviction, a general instruction on unanimity is insufficient. *Arrington v. State*, 451 S.W.3d 834, 838–39 (Tex. Crim. App. 2015). Because "[e]ach of the multiple incidents individually establishes a different offense or unit of prosecution, . . . [t]he judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented." *Id.*

---

[6]Wesley did not demand that the State elect which specific criminal conduct it relied upon for each charged offense.

10

Here, Cook testified to different instances of aggravated sexual assault when she was younger than fourteen and several instances of sexual assault occurring between the ages of fourteen and seventeen. Therefore, the jury was presented with evidence of different instances of aggravated sexual assault and sexual assault to support each count for which Wesley was convicted. Neither the State nor Cook explicitly stated which of the specific instances satisfied which count. Thus, "[t]he jury could have relied on separate incidents of criminal conduct, which constituted different offenses or separate units of prosecution," in finding Wesley's guilt on a particular charge. *Cosio*, 353 S.W.3d at 774. Therefore, the trial court was required to instruct the jury that its verdict had to be unanimous as to each single unit of prosecution—each of the seven counts in the indictment. *See id.*; *Arrington*, 451 S.W.3d at 839. However, because the trial court submitted only a general unanimity instruction, "[t]he jury may have believed that it had to be unanimous about the offenses, not the criminal conduct constituting the offenses." *Cosio*, 353 S.W.3d at 774. Because this created the possibility of a non-unanimous verdict, the jury charge was erroneous. *See id.*; *Arrington*, 451 S.W.3d at 839.

### C.     Harm Analysis

"The level of harm necessary to require reversal due to jury charge error is dependent upon whether the appellant properly objected to the error." *Murrieta*, 578 S.W.3d at 555 (citing *Abdnor*, 871 S.W.2d at 732). "Here, because the defendant did not object to the charge, we will not reverse the judgment unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), such that he did not receive a fair and impartial

11

trial." *Id.* (citing *Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.)). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)). "In making this determination, we review 'the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole.'" *Id.* (quoting *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171)). "Direct evidence of harm is not required to establish egregious harm." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

First, we examine the error in light of the entire jury charge. Here, as found above, the charge "permitted non-unanimous verdicts based on evidence presented in the case." *Tiller v. State*, 578 S.W.3d 143, 148 (Tex. App.—Texarkana 2019, no pet.) (quoting *Arrington*, 451 S.W.3d at 841). The only mention of unanimity in the charge was general, boilerplate language at the end of the charge that stated, "Your verdict must be unanimous, and when reached, you will notify the bailiff in the manner instructed and the Court will send for you and your verdict will be received in open court." Furthermore, the error affected each of the seven counts on which Wesley was convicted. *See Tiller*, 578 S.W.3d at 148. Therefore, a review of the entire charge weighs in favor of finding egregious harm.

The jury's convictions in this case were supported by ample evidence. Under Texas law, Cook's testimony alone was sufficient to support the jury's verdicts on each of the seven counts. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Supp.). Cook testified that she was thirteen years

12

old when Wesley had sex with her at the dead-end road on the night of the car accident and that they had intercourse "at least" two more times before she turned fourteen. Cook testified that they had oral sex and vaginal intercourse at the Martin Resources office "15 to 20 times," including at least once when she was only thirteen years old. She testified that, when she was between fourteen and seventeen years old, he drove her to Wright Patman Lake in his white Ford work truck, where he penetrated her mouth and vagina with his penis and touched her vagina with his mouth. At times, Wesley would abuse her when she was the last one dropped off by the church van. He asked her to send messages to his pager, telling him that she loved him. She confirmed that, when she was between fourteen years old and seventeen years old, Wesley penetrated her vagina with his fingers and penis, put his mouth on her vagina, had her put her mouth on his penis, and penetrated her anus with his penis.

The police report corroborated Cook's testimony regarding the date, location, and details of the accident as well as the model and color of the car Wesley was driving. Detective Smith's investigation revealed a dead-end road in Bowie County, Texas, that she believed to be the location of the assault that night. Smith testified that it was her opinion that the collision on Euclid was "en route" from the dead-end road to Cook's home on Mary Street in Texarkana, Arkansas. Evidence confirmed Cook's testimony that Martin Resources issued Wesley a pager and a white Ford work truck, and other testimony corroborated Cook's description of the layout and décor at the Martin Resources office. Although Cook did not make an outcry of abuse for years, Davison and Smith testified that it was not unusual for victims of chronic childhood sexual

abuse, such as Cook, to delay their outcry for years, to be unable to recall specific dates, and to provide fragmented details of the abuse.

Weighing in Wesley's favor was his own testimony and that of his family members. His family members denied ever seeing or knowing of him behaving inappropriately with Cook. Wesley maintained that he had a consensual sexual relationship with Cook but claimed that it did not start until after she was eighteen years old. Wesley testified that Cook was never dropped off last because she always got off the church van with her brother. Wesley's nephew, Derrick, testified that Cook could not ever have been the last person dropped off by the church van because he and Wesley's children were always the last ones dropped off, as they were going to Wesley's house. He claimed that Cook's allegation that she was thirteen when he had sex with her at Martin Resources could not be true because the deer head she remembered seeing there was not put in the office until 2005 or 2006, several years after Cook claims to have been there. Wesley also testified that, on the night of the car accident, he was driving the church van and both Cook and the church's guitar player, Tracy, were in the van at the time of the accident.

Thus, the jury was faced with a "he said, she said" situation requiring it to choose whether to believe Cook and the evidence supporting her testimony or to believe Wesley and his family members. *See Arrington*, 451 S.W.3d at 841. Wesley's theory of the case and his decision to testify "left the jury with an all-or-nothing decision, either he was guilty or he was not." *Id.* at 842. Had the jury believed Wesley and his version of the events, they would have acquitted him. *See id.* at 844. However, by finding Wesley guilty of all seven counts, the jury clearly rejected Wesley's defensive theory and the witness testimony in support of it. Therefore,

14

the state of the evidence weighs against a finding of egregious harm. *See id.* at 842, 844 (citing *Ruiz v. State*, 272 S.W.3d 819, 826–27 (Tex. App.—Austin 2008, no pet.)); *Cosio*, 353 S.W.3d at 777–78.

Neither party's arguments contributed or emphasized the charge error by telling the jury it did not have to be unanimous about the criminal conduct constituting each offense. "The parties also did not ameliorate the error by explaining what was required for a unanimous verdict." *Tiller*, 578 S.W.3d at 149. Accordingly, this factor is neutral. *See Arrington*, 451 S.W.3d at 844. Further, after reviewing the entire record, we find no other relevant information favoring a finding of egregious harm. Having weighed these factors, we overrule this point of error because we are unable to find that the charge error affected the basis of the case, deprived Wesley of a valuable right, or affected a defensive theory. *See Ngo*, 175 S.W.3d at 743–44 (quoting *Stuhler*, 218 S.W.3d at 719).

## III. The Judgment Should be Modified to Reference the Correct Penal Code Provisions

In his final point of error, Wesley contends that the judgements of conviction fail to state the correct provisions of the Texas Penal Code under which he was convicted. We agree and modify the judgments.

The Texas Rules of Appellate Procedure give this Court authority to modify judgments and correct typographical errors to make the record speak the truth. TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Battle v. State*, No. 06-07-00148-CR, 2008 WL 482343, at *3 (Tex. App—Texarkana Feb. 25, 2008, no pet.) (mem. op., not designated for publication) (reforming judgment to reflect proper statute under which defendant

15

should have been convicted); *Gray v. State*, 628 S.W.2d 228, 233 (Tex. App.—Corpus Christi 1982, pet. ref'd).

In this case, Wesley was convicted of two counts of aggravated sexual assault of a child under fourteen years of age, an offense found in Section 22.021 of the Texas Penal Code; however, the judgments of conviction recite Section 21.021, a nonexistent statute, as the "Statute for Offense." *See* TEX. PENAL CODE ANN. § 22.021. Similarly, he was also convicted on five counts of sexual assault of a child, an offense under Section 22.011 of the Penal Code, but the five judgments of conviction incorrectly list Section 21.011, a nonexistent statute, as the "Statute for Offense." *See* TEX. PENAL CODE ANN. § 22.011 (Supp.).

Therefore, so that the judgments reflect conviction under the correct statute, we modify the two judgments for aggravated sexual assault of a child under fourteen years of age by replacing Section 21.021 with Section 22.021, and we modify the five judgments for sexual assault of a child by replacing Section 21.011 with Section 22.011.

As modified, we affirm the trial court's judgments.

Ralph K. Burgess
Justice

Date Submitted: March 30, 2021
Date Decided: December 16, 2021

Do Not Publish

16